IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-01482-LTB-KLM (Consolidated w/11-cv-02321-RPM-MJW)

ONYX PROPERTIES LLC, a Colorado Limited Liability Company;
EMERALD PROPERTIES, LLC, a Colorado Limited Liability Company;
VALLEY BANK AND TRUST, a Colorado State Bank;
PAUL NAFTEL, an individual;
SHAUNA NAFTEL, an individual; and
The Estate of LOCAL SERVICE CORPORATION by and through its
      Chapter 11 Bankruptcy Trustee, SIMON E. RODRIGUEZ,

        Plaintiffs,

vs.

BOARD OF COUNTY COMMISSIONERS OF ELBERT COUNTY,

        Defendant.

_____

KENNETH G. ROHRBACH,
KAREN L. ROHRBACH,
PAUL K. ROHRBACH, and
COMPOST EXPRESS, INC., a Colorado corporation,

        Plaintiffs,

vs.

BOARD OF COUNTY COMMISSIONERS OF ELBERT COUNTY, in its official capacity,

        Defendant.

_____

ORDER

_____

This matter is before me on the following motions filed by Defendant Board of County

Commissioners of Elbert County (the "BOCC"):  (1) Defendant's Motion for Summary

Judgment on Claims of Kenneth G. Rohrbach, Karen L. Rohrbach, Paul K. Rohrbach, and

Compost Express, Inc. (the "Rohrbachs") [**Doc # 81**]; and (2) Defendant's Motion for Summary

Judgment on Claims of Onyx Properties LLC, Emerald Properties LLC, Valley Bank and Trust, Paul & Shauna Naftel, and the Estate of Local Service Corporation (collectively, the "Development Plaintiffs")[**Doc # 80**].  Oral arguments will not materially aid in the resolution of these motions.  After consideration of the parties' briefs, and for the reasons stated below, I GRANT the motion seeking judgment against the Rohrbachs, and I DENY the motion seeking summary judgment against the Development Plaintiffs.

## I.  BACKGROUND

This lawsuit follows a decision in which the Colorado Court of Appeals reversed a trial court ruling that the BOCC proved that the Rohrbachs' property – located in Elbert County – was zoned "A-Agriculture" in a zoning enforcement action brought by the BOCC seeking to enjoin the Rohrbachs from operating a commercial composting business on that property. *Board of County Commissioners of Elbert County v. Rohrbach*, 226 P.3d 1184 (Colo. App. Sept. 3, 2009)("*Rohrbach I*").  In *Rohrbach I*, a panel of the Court of Appeals determined that the relevant zoning regulation, which purported to establish the zoning areas in Elbert County, could not be used to ascertain the applicable zoning of the Rohrbachs' property because it:

> established zoning areas by showing them on the map 'dated July 5, 1983.'  The [BOCC] was not able to find and did not introduce that map into evidence. Because the text of the regulation relied on the map to establish the zoning and the map was not produced, the [trial] court could not ascertain the zoning adopted by the [BOCC] . . .

*Id.* at 1188.  The Court concluded that "because the [BOCC] did not introduce a copy of the July 5, 1983 map in this case, it failed to prove that the Rohrbachs' property was zoned agricultural [and] thus, the trial court erred in granting the injunction."  *Id.* at 1189.  A Petition for Writ of Certiorari was subsequently denied by the Colorado Supreme Court on March 15, 2010.  *See*

2

2010 WL 893813 (Colo. 2010).

Following the ruling by the Colorado Court of Appeals, the Development Plaintiffs filed this lawsuit against the BOCC in June of 2010. [Doc # 1]  The Development Plaintiffs owned large tracts of property in Elbert County that they sought to divide into 35-acre parcels for development and sale in 2004-2006.  The property known as Kiowa Creek Estates was owned by Plaintiffs Onyx Properties, Emerald Properties, and Paul & Shauna Naftel (collectively, "Onyx").  The property know as Wolf Creek Ranches & Wolf Creek Estates was owned by Plaintiff Local Service Corporation ("LSC") and, later, by Plaintiff Valley Bank and Trust.  The BOCC required both developments to proceed through a re-zoning process.  Ultimately, in two separate applications, Wolf Creek Ranches & Wolf Creek Estates were re-zoned from "A-Agriculture" to an "A-1" designation on October 27, 2004 and November 17, 2004.  Kiowa Creek Estates was subsequently re-zoned from "A-Agriculture" to an "A-1" designation on September 20, 2006.

In this lawsuit, the Development Plaintiffs assert individual claims under 42 U.S.C. §1983 for the loss of their individual property rights, without due process of law, by the BOCC's alleged illegal enforcement of its invalid zoning regulations and related map in the re-zoning process.  They also asserted class claims, for violations of the class' constitutional rights, on behalf "of all persons who have on or after August 28, 1997 (1) submitted an application for an A-1 rezone; and (2) all persons who have had the A-1 provisions of the Zoning Regulations . . . enforced against them regarding the A-1 zone." [Doc #1]   The definition of the class was later amended and broadened to include "all persons who submitted any application under Elbert County's Zoning Regulations and who were subjected to [Elbert] County's enforcement of any

aspect of its Zoning Regulations." [Doc # 57]

The Rohrbachs also filed a federal lawsuit on September 2, 2011 (Case No. 11-cv-2321-RPM-MJW) seeking damages under 42 U.S.C. §1983 for violation of due process, against the BOCC for enforcement of its alleged unconstitutional and non-existent zoning regulations. Their federal lawsuit was subsequently consolidated into this case. [Doc #13]

Before the case was consolidated, the Rohrbachs filed a motion seeking summary judgment in their favor on their §1983 claim on the issue of liability only against the BOCC. [Doc #3 in 11-cv-2321]  I denied the motion on the basis that their §1983 claim appeared to be time barred by the running of the applicable statute of limitations prior to the filing of their federal lawsuit. [Doc #71]  In addition, Onyx also filed a motion seeking summary judgment in its favor, as a matter of law, on the BOCC's liability related to its individual §1983 claim. [Doc #39]  I again ruled that Onyx was not entitled to entry of summary judgment in that its §1983 claim appeared to be time barred by the running of the applicable statute of limitations. [Doc #70]

As a result of these rulings, the BOCC has filed the motions now at issue here seeking summary judgment in its favor on all the individual §1983 claims brought by the Rohrbachs and brought by  the Development Plaintiffs, on the basis that their §1983 claims are time-barred.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment

as a matter of law." Fed. R. Civ. P. 56(c).  A statute of limitation defense is an affirmative

defense. *See* Fed. R. Civ. P. 8(c).  Where a defendant seeks summary judgment on the basis of an

affirmative defense, "[t]he defendant . . . must demonstrate that no disputed material fact exists

regarding the affirmative defense asserted.  If the defendant meets this initial burden, the plaintiff

must then demonstrate with specificity the existence of a disputed material fact.  If the plaintiff

fails to make such a showing, the affirmative defense bars his claim, and the defendant is then

entitled to summary judgment as a matter of law." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th

Cir. 1997)(citations omitted).

### III.  MOTION AGAINST ROHRBACHS

In this motion, the BOCC argues that summary judgment should be entered in its favor

on the §1983 claims brought against it by the Rohrbachs based on my prior ruling denying the

Rohrbachs' motion seeking summary judgment, on grounds that it appeared to be time barred.

[Doc # 81].

In that ruling, I first noted that the applicable period of limitations is two years.  *See*

Colo. Rev. Stat. §13-80-102(g).  In applying the two-year limitations period, I first determined

the accrual date – the date when it began to run – as "the date when the Rohrbachs knew or

should have known that their constitutional rights were violated." *See Smith v. City of Enid By*

*and Through Enid City Comm'n.,* 149 F.3d 1151, 1154 (10th Cir. 1998)(to identify the date of

accrual in a §1983 case, the court is to "to identify the constitutional violation and locate it in

time"); *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)("[a] civil rights action accrues

when facts that would support a cause of action are or should be apparent").  Thus, I agreed with

the BOCC's argument that the date when the violation accrued was either:  1) June 29, 2006 –

when Elbert County sent the Rohrbachs a notice indicating that they must cease their composting operations because they were not in compliance with Elbert County zoning regulations; or 2) November 10, 2006 – when Elbert County filed its enforcement action against the Rohrbachs in state court.  The Rohrbachs' federal case – filed on September 2, 2011 – was outside of the two-year limitations period under §13-80-102, and, as such, I found it appeared to be time barred in this Court.

In so ruling, I rejected the Rohrbachs' argument that the accrual date was September 3, 2009, the date the Colorado Court of Appeals reversed the decision of the trial court in *Rohrbach I.*  I first rejected the Rohrbachs' argument that the parties' stipulations in the state court action – which bifurcated the action and allowed the injunction issues to proceed while the Rohrbachs' §1983 counterclaims were deferred – had the effect of "changing or re-setting" the statute of limitations accrual date.  I also rejected the Rohrbachs' assertion that the statute of limitations was tolled during the pendency of the state court litigation.  Thus, because I determined the statute of limitations issue in favor of the BOCC, I denied the Rohrbachs' motion seeking summary judgment in their favor.

Based on this ruling, the BOCC now seeks entry of summary judgment in its favor on its statute of limitations affirmative defense.  The Rohrbachs oppose this request, and make the following arguments as to why the applicable two-year statute of limitation should not bar their lawsuit.

## A.  Date of Filing:

I first address the Rohrbachs' argument that the date they filed their §1983 claim – for the purpose of assessing whether it was timely filed within the limitations period – was not the day

they filed their lawsuit in this court (September 2, 2011), but rather was the date that the

Development Plaintiffs filed their class action complaint (June 23, 2010).  The Rohrbachs refer

me to *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713

(1974), which held that the initiation of class action litigation suspends the running of any statute

of limitation period as to the prospective class members while a decision on class certification is

pending.

I agree with the BOCC, however, that the ruling of *American Pipe v. Utah, supra,* is not

applicable here because the Rohrbachs were not part of the putative class at the time the initial

complaint was filed by the Development Plaintiffs.   The suspension of the running of a statute

of limitations, as provided for in *American Pipe v. Utah,* is not applicable when the plaintiff was

not a putative member of the class action.  *Sawtell v. E.I. du Pont de Nemours and Co., Inc.,* 22

F.3d 248, 253 (10th Cir. 1994); *see also State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d

1223, 1232 (10th Cir. 2008)(ruling that the tolling doctrine of *American Pipe v. Utah* is based on

the reasoning that "each putative class member has effectively been a party to an action against

the defendant since a class action covering him was filed")(citation omitted).  At the time that

the Development Plaintiff's action was initially filed in June 2010, the class was described only

as those who had applied for an A-I re-zone or had has A-1 zoning restrictions applied to them.

Although the proposed class was subsequently expanded in an amended complaint to include

anyone who was subjected to Elbert County's unofficial zoning maps – including,

presumptively, the Rohrbachs – the proposed amended complaint was not filed until September

3, 2011, the day after the Rohrbachs filed their federal lawsuit on September 2, 2011. [Doc #30]

In response, the Rohrbachs contend – without specific argument or authority – that the expanded definition of the class in the amended complaint "relates back" to the original filing of the complaint. Fed. R. Civ. P. 15(c)(1) provides that an amendment relates back to the date of the original pleading in three specific circumstances: 1) when the law that provides the applicable statute of limitations allows relation back; 2) when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading; or 3) when the amendment changes the party or the naming of the party against whom a claim is asserted. The only circumstances presented here for application of Rule 15(c) would be that the amendment asserts a claim "that arose out of the conduct, transaction, or occurrence set out in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

In an unpublished opinion, the Tenth Circuit recently ruled that a class member could not apply the relations back doctrine set forth in Rule 15(c) to an amended complaint (which included class claims) to toll the statute of limitations back to the initial complaint (which did not contain class claims) in *McClelland v. Deluxe Financial Services, Inc.,* 431 Fed.Appx. 718, 2011 WL 3100341 (10th Cir. 2011)(not selected for publication). After surveying the applicable case law, the Court concluded that the initial complaint did not give the defendant in that case sufficient notice of the impending class claims to allow relation back under Rule 15(c). *Id.; see also Baldwin Cnty. Welcome Cntr. v. Brown*, 466 U.S. 147, 149 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)("[t]he rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide").

In this case the BOCC was only on notice that the putative class was initially those citizens that had either submitted an application for an A-1 re-zoning, or been subjected to the A-1 zoning regulations or designation by Elbert County.  I conclude the BOCC was not on notice, at that time, that the class claims should or would be expanded to include all persons who where subjected to enforcement of any Elbert County zoning regulation, as set forth in the amended complaint and which the parties agree now include the claims of the Rohrbachs.  As a result,  the amended complaint does not relate back to the initial complaint under Rule 15(c) and, therefore, I conclude that the date of filing of the Rohrbachs' §1983 claim against the BOCC was September 2, 2011, the date they filed their lawsuit in federal court.

**B.  Accrual Date**:

In light of my conclusion that the date of filing in this case was in September of 2011, I do not reach the Rohrbachs' argument that their §1983 claim accrued on June 24, 2008 – the date the Colorado state trial court enjoined them from using their property for commercial composting purposes  – because that was the time their property rights were actually deprived. Even if I were the accept this argument, the two-year statute of limitations would still apply to bar their complaint as an accrual date of June 24, 2008 would have commenced the start of the two-year statute of limitations period and, as such, required a filing date of on or before June 24, 2010.

However, the Rohrbachs also argue that the accrual date for their cause of action was the date the Colorado Court of Appeals overturned the trial court's injunction against them; specifically, March 26, 2010, the date mandate was issued in *Rohrbach I.*  The Rohrbachs maintain that their pending state court litigation proceedings suspended the start of the running

of the statute of limitations on their §1983 claim under the "continuing wrong" theory.

First, I reject the Rohrbachs' "continuing wrong" argument to the extent that it is based on *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).  In *Heck v. Humphrey*, the Supreme Court held that a state prisoner's §1983 claim was not cognizable if a judgment in his or her favor on that claim would necessarily imply the invalidity of his or her conviction or sentence.  Under this ruling, a potential §1983 claim would not accrue or start the running of the statute of limitations until the underlying conviction or sentence is invalidated.  However, the deferred accrual date provided for by *Heck v. Humphrey*, *supra*, does not apply here, as it is undisputed that there is no underlying conviction or sentence delaying the litigation of the §1983 challenge.  *See generally Garza v. Burnett,* 672 F.3d 1217, 1219 (10th Cir. 2012)("a plaintiff advancing a claim subject to the *Heck* bar is required to show that [his or] her conviction was reversed or otherwise set aside . . . and the claim does not accrue until the date the conviction is declared invalid")(citations omitted).

Rather, the legal theory advanced by the Rohrbachs in this case is that the Government commits a "continuing wrong" supporting a different accrual date, when, through court action, it deprives an individual use of his or her property pending court proceedings.  In support of this argument, the Rohrbachs refer me to an unpublished order on a motion to dismiss from the district court in the Eastern District of Pennsylvania which found that state litigation tolled the statute of limitations on a §1983 claim, under a "continuing wrong" theory, when "an act by a governmental entity actually deprives an individual of use of his property pending court proceedings." *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 1996 WL 47973, 4 (E.D.Pa. 1996)(unpublished)(citations omitted).  This is the only authority cited by the

Rohrbachs, and my research failed to reveal other case law finding that state law litigation constituted a "continuing wrong" in order to toll a statute of limitations on a §1983 due process claim.  Moreover, Colorado law – which governs questions of tolling – indicates "a policy disfavoring tolling by mere pendency of a prior action."  *Cook v. G.D. Searle & Co., Inc.,* 759 F.2d 800, 805 (10th Cir. 1985); *see also Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004)*(*"[s]tate law governs the application of tolling in a civil rights action").  "Absent a specific statutory provision, Colorado law does not allow for the tolling of a statute of limitations during the pendency of a prior action."  *SMLL, L.L.C. v. Peak Nat. Bank*, 111 P.3d 563, 565 (Colo. App. 2005)(citations omitted).  I find this law relating to the tolling of a statute of limitations period to be persuasive and applicable to the Rohrbachs' essentially unsupported argument here for a deferred accrual date.   As a result, I reject that Rohrbachs' assertion that the accrual date in this case was deferred or suspended based on a theory that the underlying state court lawsuit constituted a "continued wrong" by the BOCC.

## C.  Equitable Estoppel:

Finally, the Rohrbachs contend that the BOCC should be equitably estopped from asserting the statute of limitations as a defense, as its actions contributed to the Rohrbachs' delay in filing its lawsuit in this court.  Specifically, the Rohrbachs assert that the stipulations entered into by the parties in state court – in which they agreed to bifurcate and delay ruling on the Rohrbachs' §1983 claims from their respective injunction claims – constituted acts that contributed to the running of the statute of limitations and, as a result, the BOCC should be estopped from asserting a statute of limitations defense.

In my previous order, I determined that Colorado law permits application of the equitable tolling doctrine "only in situations in which the defendant has wrongfully impeded the plaintiff's ability to assert the claim, or in which truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Chilcott Entertainment v. John G. Kinnard Co.,* 10 P.3d 723, 726 (Colo. App. 2000)(*quoting Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996)(ruling against a plaintiff who argued for equitable tolling during the time he waited to bring an action until entry of final judgment in a related action against a third party)).  As such, I ruled that the stipulations entered into by the parties in the state court matter did not entitle the Rohrbachs to equitable tolling.  Specifically, I ruled that because the Rohrbachs neither demonstrated that the BOCC wrongfully impeded their ability to bring the claim, nor that truly extraordinary circumstances prevented them from filing their §1983 action here despite diligent efforts, they were not entitled to equitable relief under Colorado law.  *See Clementson v. Countrywide Financial Corp.,* 2012 WL 375508, 5 (10th Cir. 2012)(not selected for publication); *Braxton v. Zavaras, supra,* 614 F.3d at 1159 -60 ("[u]nder Colorado law, plaintiffs bear the burden of demonstrating that the statute of limitations should be tolled).

The Rohrbachs do not re-argue that they are entitled to equitable tolling, but rather that they are entitled to equitable estoppel which bars the BOCC from asserting the statute of limitations defense entirely.  In support of this argument, Plaintiffs refer to Colorado authority that provides that "where a party's acts or omissions contribute to the running of a statute of limitations, the doctrine of equitable estoppel may bar that party's raising the limitations statute as a defense." *Shell Western E&P, Inc. v. Dolores County Bd. of Com'rs,* 948 P.2d 1002, 1007-08 (Colo. 1997)(*citing Strader v. Beneficial Finance Co. of Aurora* 191 Colo. 206, 551 P.2d 720,

724 (Colo. 1976)).  "Where a defendant's wrongful actions have been the cause of a plaintiff's failure to institute a timely action, the defendant may be estopped from relying upon the resulting delay as a defense to the plaintiff's claim."  *Shell Western v. Dolores County, supra,* 948 P.2d at 1008 (*citing Duell v. United Bank of Pueblo*, 892 P.2d 336, 341 (Colo. App. 1994)).

In his affidavit, Paul Rohrbach states that it was the BOCC who initiated the stipulation on the basis that "if we agreed to stay the prosecution of our §1983 claims, all parties, including the BOCC, would realize a significant cost savings in the long term."  He further avers that "[o]ur understanding of the stay agreements was that we would not and could not pursue our §1983 claims during the pendency of these agreements in any forum," and that "[i]t was quite surprising to me that the BOCC subsequently argued that we should have pursued our §1983 claims despite our having agreed not to do so."  [Doc # 81, Ex. 94]

In order to apply equitable estoppel to bar a statute of limitations defense, the following elements must be established, as related to the running of the limitations period, under Colorado law:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are other than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention or at least an expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts.
>
> As related to the party claiming estoppel, they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Roehrs v. County of Morgan,* 991 P.2d 322, 325 (Colo. App. 1999)(*quoting Aubert v. Town of Fruita,* 192 Colo. 372, 374, 559 P.2d 232, 234 (1977)).  In *Roehrs v. County of Morgan*, *supra*, a

13

division of the Colorado Court of Appeals ruled that the defendant – the County of Morgan – was equitably estopped from asserting a statute of limitations defense against the plaintiffs' claim that the tax sale of their mineral interests was illegal, when the evidence was that the plaintiffs asked the County to let them know if they were wrong in believing no tax sale would occur, and instead the County concealed the tax sale so that the plaintiffs could not timely challenge it. *Id.* 991 P.2d at 325.

Here, in contrast, the alleged acts of the BOCC that contributed to the running of a statute of limitations was merely requesting that the Rohrbachs sign stipulations in the state court action which agreed to bifurcate and delay ruling on the Rohrbachs' §1983 claims.  The Rohrbachs do not allege that they were somehow coerced into signing the stipulations, or that the BOCC intended them to serve to bar Plaintiffs's eventual litigation of their §1983 claims.  Moreover, as I have previously ruled, the stipulations contained no language agreeing to toll or suspend the running of any statute of limitations period.  This is not a case in which the BOCC's actions rose to the level of "a false representation or concealment of material facts" or even to "convey the impression that the facts are other than, and inconsistent with" the position that BOCC is now asserting here.

I decline to accept the Rohrbachs' argument to the extent that they assert that neither fraud nor intent to deceive is required for the invocation of equitable estoppel in the case where a party consented to was induced to stay or postpone suit.  *See Robinson v. City of New York*, 265 N.Y.S.2d 566, 570 (1st Dept. 1965)(noting that "[t]he estoppel to plead the statute may arise without the existence of fraud or an intent to deceive ... [i]f the agreement, representations or conduct of the defendant were calculated to mislead the plaintiff, and the plaintiff in reliance

14

thereon failed to sue in time").  The Rohrbachs' reliance on a 1965 case of New York does not undermine clear Colorado authority that requires conduct that, at the least, is calculated to convey the impression that the facts are inconsistent and other than facts which subsequently asserted. *See Roehrs v. County of Morgan, supra,* 991 P.2d at 325.

As I ruled previously, I conclude that the Rohrbachs' §1983 claims accrued, at the latest, on November 10, 2006, when Elbert County filed its enforcement action against the Rohrbachs in state court.  And, because I have again determined that the filing date of the Rohrbachs' federal case here, on September 2, 2011, was the date of filing for the purposes of assessing the running of the statute of limitations, I hold that their §1983 claims are time barred <u>in this Court</u> as outside of the applicable two-year limitations period.  Because the BOCC has demonstrated that no disputed material fact exists regarding its statute of limitations defense, I conclude that the BOCC is entitled summary judgment against the Rohrbachs on the grounds that their §1983 claims are untimely here.  But, it appears the Rohrbachs may pursue their individual §1983 claims in state court.

## IV.  MOTION AGAINST THE DEVELOPMENT PLAINTIFFS

The BOCC also asserts that it is entitled to summary judgment on the individual §1983 claims raised by the Development Plaintiffs based on my prior ruling – on the motion filed by Onyx seeking summary judgment in its favor on the BOCC's liability – that the period of limitations appeared to have run on Onyx's §1983 claims. [Doc # 80]

In that ruling, I determined that the constitutional violation and injury occurred when Elbert County enforced the allegedly improper zoning regulations and maps against Onyx by requiring that it re-zone Kiowa Creek Estates in 2006.  Although Onyx maintained there was

nothing that would have put it on notice that the regulations and/or maps being enforced against it were illegal – in that Elbert County's Planning Department improperly held out that the zoning regulation and maps it was enforcing were proper and official – I concluded, based on the evidentiary record before me, that Onyx should have discovered that they were improper at the time Onyx was required to submit an application to re-zone the property.  As a result, I concluded that the accrual date on Onyx's §1983 claim commenced on September 20, 2006, and thus the two-year statute of limitations period expired in September of 2008, prior to the time the Development Plaintiffs filed this lawsuit on June 23, 2010.  [Doc # 80]  In this motion, the BOCC seeks summary judgment in its favor, and against the Development Plaintiffs, based on that prior ruling.

The Development Plaintiffs assert, in response, that the BOCC is not entitled to summary judgment on the basis that the statute of limitations has run because, contrary to my previous ruling, there is sufficient evidence to create a question of fact as to whether the Development Plaintiffs had information at the time of the re-zoning determinations to put them on "inquiry notice" of the BOCC's alleged constitutional violations.  The Development Plaintiffs argue that they had no reason to question, and there was nothing to put them on notice of, the alleged violations.  In fact, they produce evidence supporting their contention that the improprieties in the Elbert County regulations and maps were actively suppressed and concealed by the BOCC from both the Development Plaintiffs and the general public.

As a result, the Development Plaintiffs maintain that they had no reason to question or investigate the requirement that they re-zone until they were made aware of the BOCC's actions, related to the Planning Department's zoning decisions, in the Spring of 2010.  Therefore, the

Development Plaintiffs assert that the filing of this lawsuit in June of 2010 was timely within the two-year statute of limitations period.

## A.  Date of Accrual:

In my prior ruling, I determined that the accrual date in this case for Onyx was the date when it "knew or had reason to know of the injury" which is the basis of the action.  I first determined that the constitutional violation and injury occurred when the alleged improper zoning regulations and maps were enforced against the Development Plaintiffs at the time they were required to re-zone their property; specifically, the injury occurred against Onyx when the BOCC ruled upon the re-zoning  application of Kiowa Creek Estates on September 20, 2006.

I also ruled that while Onyx may not have been aware at the time that the regulations and maps being used by Elbert County to require the re-zoning were illegal, Onyx should have discovered, with reasonable diligence, that wrongful conduct caused the harm.  I determined that the evidence before me was that Onyx had retained both experienced counsel and an owner-consultant/representative during the re-zoning process and, moreover, that with some reasonable investigation, other property owners (the Rohrbachs) had discovered the alleged impropriety when Elbert County attempted enforcement against them in 2005.  Thus, I ruled that Onyx should have discovered, with reasonable diligence and investigation, that wrongful conduct caused the harm and I concluded that the accrual date on Onyx's §1983 claim commenced on September 20, 2006. [Doc # 80]

In their response to this motion, the Development Plaintiffs again assert that they did not have knowledge of sufficient critical facts that would put them, or a reasonable person in their position, on notice that wrongful conduct caused the harm at the time of the ruling on their re-

zoning applications.  In support of this argument, they have submitted additional evidence that I

now rule creates an issue of material fact sufficient to withstand summary judgment on the issue

of the accrual date on the running of the two-year statute of limitations.

First, as to Plaintiffs Onyx, Emerald, and Paul & Shauna Naftel, they assert that they did

not, in fact, retain legal counsel during the process of re-zoning of Kiowa Creek Estates in 2006.

In support of this assertion, they provide Paul Naftel's affidavit which avers that "Onyx

Properties did not have legal counsel for the Rezoning Application." [Doc #86 - Ex. 92]  They

also provide an affidavit from the attorney that represented them in their negotiations with the

mineral owners of Kiowa Creek Estates.  That attorney, Jack E. Reutzel, averred that his "work

involved issues relating solely to mineral issues regarding oil, gas and coal . . . I did not

represent Onyx property on any rezoning application before Elbert County."  And, "[a]s a result,

I did not, nor did I have any reason to review Elbert County's zoning regulations and maps

during my representation except as they pertained to oil and gas issues."  [Doc #86 - Ex. 90]

Keith Westfall – who was Onyx's owner-consultant/representative for the Kiowa Creek

Estates during the re-zoning application process – provides in his affidavit that the Elbert County

Planning Director, Ken Wolf, represented to him that  Kiowa Creek Estates was zoned A-

Agriculture, and needed to be re-zoned to A-1 in order to be divided into 35-acre parcels.  He

further averred that "I had no reason to believe that Mr. Wolf's representation of the zoning . . .

were in any way inaccurate" and "[m]y responsibilities did not include a review of the validity of

Elbert County's Zoning Regulations and maps . . . [n]or did I see any reason to believe that the

Elbert County's Zoning Regulations and maps were invalid." [Doc #86 - Ex. 91]

The Development Plaintiffs also provide me with new evidence providing insight as to how the Rohrbachs became aware of facts that put them on notice of the possible illegality of Elbert County's zoning regulations and maps that, in turn, prompted their investigation.  They maintain, for the first time here, that the reason that the Rohrbachs became aware of possible issues with the zoning regulations was that at the time the BOCC attempted to enforce those regulations against them in 2005, in order to enjoin their composting operations, the Rohrbachs' hired Attorney James Thorburn.  Mr. Thorburn had, apparently coincidently, learned of irregularities in the Elbert County zoning regulations and maps via his previous representation of an unrelated property owner in a zoning dispute with Elbert County in 1999-2000.  During that dispute, Mr. Thorburn was required to submit an Open Records Act request for the Elbert County zoning map, but instead was provided a copy of the Elbert County Assessors map and copies of the handwritten zoning "notepad" indicating the applicable zoning designation in that case.  [Doc #86 - Ex. 81]   Furthermore, in an affidavit from Floyd Crossman – a former Code Enforcement Officer at the Elbert County Planning Department – Mr. Crossman indicated that he dealt with Mr. Thorburn on the unrelated matter, and that after requiring him to submit an Open Record Act request – which he indicated would often "have the effect of the person dropping the matter entirely" – Mr. Thorburn was provided the notebook information which was "not normally disseminated to the public, let alone an attorney."  [Doc #86 - Ex. 81]

In Paul Rohrbach's affidavit, he averred that he did not suspect any problem with the Elbert County zoning maps until after speaking with Mr. Thorburn, and that he only persisted with his investigation after Planning Director Ken Wolf actively represented that the maps were official, "because I now suspected that Mr. Wolf's representations were false."  As to his

investigations into the propriety of zoning regulations, Paul Rohrbach stated that he did not

suspect any problems with the regulations until he compared the original regulation to its

amendments during discovery and the trial of *Rohrbach I*. [Doc # 39 - Ex. 89]

In addition, Mr. Crossman indicates in his affidavit that while working at Elbert County

he "realized that different versions of the same regulations were being held out to the public as

the 'official regulation'" and that in his experience as an Elbert County Code Compliance

Officer "when I told a member of the public that his or her property had certain zoning

designation, that person accepted it generally without reservation" as "I gave the public no

reason to doubt my word."   Finally, Mr. Crossman avers that:

> Despite the fact that all of us in the Planning Department knew that there were
> problems with the Zoning Regulations and maps, we held out to the public that
> these regulations and maps were valid, official and were the final word.  To my
> knowledge, with the exception of the information provided to Mr. Thorburn in the
> [unrelated] matter, we did not give the public any information sufficient for them
> to suspect that there were problems with the Zoning Regulations and maps.

[Doc #86 - Ex. 81]  I further note that the Development Plaintiffs have provided a transcript from

a 1997 BOCC meeting during which Planning Director Ken Wolf indicated to the BOCC that he

was put in a position recently where he had to produce "the [Elbert] County zoning map" but, as

a County Commissioner indicated, "We don't have one," to which Mr. Wolf responded "That's

correct." [Doc # 39, Ex. 4]

Finally, Paul Naftel's affidavit provides that "I first learned about the [alleged issues with

the Elbert County zoning regulations and maps] in the Spring of 2010, when Keith Westfall

contacted me.  He had recently learned about the [*Rohrbach I*] decision, and thought that we may

have been affected by the BOCC's actions in our A-I rezone.  He referred me to Mr. Thorburn,

and I began my investigation regarding the BOCC's actions at that time."  [Doc #86 - Ex. 108]

As to the other Development Plaintiffs, they also provided affidavits indicating that when they sought to divide Wolf Creek Ranches & Wolf Creek Estates in 2004, they were given information about the zoning of their property via official looking maps and regulations, and they "were given no reason to doubt [the] veracity" of the documents or of Planning Director Ken Wolf's representations to them.  John Watson, the owner of Plaintiff LSC – who owned Wolf Creek Ranches & Wolf Creek Estates at the time of the re-zoning application –  avers that "I did not become aware of [alleged] infirmities of Elbert County's Zoning Regulation until just recently in 2011 when Mr. Rodriguez, the [bankruptcy] trustee of LSC, told me of these newly found issues." [Doc #86 - Ex. 109]

Michael Van Norstrand, General Counsel of Plaintiff Valley Bank & Trust – who acquired title to Wolf Creek Ranches & Wolf Creek Estates via foreclosure in April 2008 – avers in his affidavit that "[i]n the Spring of 2010, I was informed by Paul and Shauna Naftel that Elbert County may have used an illegal process to obtain the LSC A-I Rezone . . . [and t]his was the first time that I am aware of that any member of Valley Bank had heard about the missing zoning maps, the repealed A-I zone," and the alleged illegal implementation of them by Elbert County.  In addition, '[p]rior to that time, I had no information to lead us to suspect that there was any problem with the way that Elbert County had obtained the restrictions on Valley Bank's title to the Wolf Creek Properties" via the requirements of the re-zoning application.  [Doc #86 - Ex. 110 & 111]

In this motion, the parties disagree about the applicability of the federal law of discovery as it relates to the accrual date on §1983 claims.  As I have previously determined, however, the law in the Tenth Circuit is that a §1983 action accrues when the plaintiff knows or has reason to

know of the injury that is the basis of the action which, in turn, occurs once the plaintiff knows of his injury or should have discovered it through the exercise of reasonable diligence.  *See Smith v. City of Enid, supra*, 149 F.3d at 1154; *Alexander v. Oklahoma*, *supra*, 382 F.3d at 1216. The test of whether a plaintiff should have discovered the injury through the exercise of reasonable diligence is an objective one, with the focus "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Id. (citing Baker v. Board of Regents of State of Kan.,* 991 F.2d 628, 632 (10th Cir. 1993)).  "In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Mata v. Anderson*, 685 F.Supp.2d 1223, 1247 (D.N.M. 2010)(*quoting Alexander v. Oklahoma, supra*, 382 F.3d at 1216).

The BOCC argues that while the Development Plaintiffs' affidavits may show that they did not actually become aware of the alleged constitutional problems with the Elbert County's zoning enforcement until many years after they were required to re-zone their properties in 2004 and 2006, the evidence does not support a later accrual date under the discovery rule because a reasonable person, using reasonable diligence, would have investigated and discovered the irregularities in the regulations and/or maps.  It argues that a reasonable disgruntled landowner would be motivated to investigate an adverse land use decision.  It is clear, however, that the parties did not view the requirement to re-zone as adverse.  The BOCC also asserts that the affidavits show that the parties merely took Planning Director Ken Wolf's word about the zoning requirements without question, and they did no independent investigation to confirm that the zoning on their property was valid.  The BOCC further notes evidence that other landowners subjected to zoning determinations had made such investigation.

22

In making this argument, however, the BOCC ignores the evidence that Elbert County –

or at least its Planning Department – actively concealed the zoning irregularities and the lack of

an official zoning map from the Development Plaintiffs.   I disagree with the BOCC, however,

that the Development Plaintiffs' failure to inquire or conduct an investigation is unreasonable, as

a matter of law, in order to enter summary judgment.   In light of the evidence now presented in

the Development Plaintiffs' response to this motion, I conclude that a genuine issue of material

fact exists as to whether they used reasonable diligence to discover facts that would put a

reasonable person on notice that the BOCC's alleged wrongful conduct caused the harm.   As a

result, I decline to follow my prior determination as to the accrual date in this case and conclude

that the BOCC is not entitled summary judgment against the Development Plaintiffs on the

grounds that the statute of limitations has run.   *See Dzenits v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 494 F.2d 168, 171 (10th Cir. 1974)("a court should not grant summary judgment for

a defendant if there is a viable issue of fact as to when the limitations period began").

**B.  Equitable Tolling:**

Based on my ruling that a material question of fact precludes a summary judgment

determination on the running of the statute of limitations on the Development Plaintiffs'

individual §1983 claims, I do not reach the merits of their alternative argument that I should

equitably toll the limitations period based on the BOCC's alleged failure to properly record and

index the Elbert County zoning regulations, amendments, and maps as required by Colorado law.

### V. CONCLUSION

Accordingly, I conclude that the undisputed facts indicate an accrual date on the

Rohrbachs' individual §1983 claim against the BOCC on either June 29, 2006 – when Elbert

County sent the Rohrbachs a notice indicating that they were not in compliance with Elbert County zoning regulations – or, at the latest, November 10, 2006 – when Elbert County filed its enforcement action against the Rohrbachs in state court.  The evidence demonstrates that it was at this time that the Rohrbachs knew of the injury that is the basis of their §1983 action raised here.  The Rohrbachs' continuing wrong theory does not defer that date, nor does equitable estoppel bar the BOCC from asserting a statute of limitations defense.   Thus, because I have determined that the applicable filing date of the Rohrbachs' 1983 claim was the date they filed their federal case – September 2, 2011 – I conclude that it was outside of the two-year limitations period and that the BOCC has demonstrated that it is entitled to summary judgement against the Rohrbachs on the grounds that their §1983 claims asserted here are untimely.

On the other hand, I conclude that the BOCC is not entitled to summary judgment on its claim that the Development Plaintiffs' individual §1983 claims are time barred because I conclude that a genuine issue of material fact exists as to when their claims accrued for the purpose of assessing when the two-year statute of limitations began to run.

The Rohrbachs assert that injustice could occur if I allowed the Development Plaintiffs case – including both the individual §1983 claims and the class claims – to proceed, while dismissing their §1983 claims.  Because their §1983 counterclaims remain pending in state court in the *Rohrbach I* matter, they contend that an inconsistent ruling in the state court action could have a collateral estoppel effect on the Development Plaintiffs' §1983 claims asserted here. Thus, they ask that I use equitable powers to "fashion an equitable exception to the statutory limitations period."   I not persuaded by this argument which is unsupported, speculative, and does not explain how creating an exception for the Rohrbachs to the statutory limitations period

would preclude or avoid inconsistent rulings.

Finally, the Rohrbachs have requested that if I rule in favor of the BOCC, I should "order the dismissal without prejudice to the Rohrbachs continuing their state court action in *Rohrbach I*" where their §1983 counterclaims remain pending. The Rohrbachs indicate that although "it is clear that the Rohrbachs' claim in the state court action in *Rohrbach I* are timely" they maintain that it is possible that the BOCC would use the dismissal of this action to attempt to likewise bar the pending claims in *Rohrbach I*. While I appreciate the practicality of this request, I agree with the BOCC that Fed. R. Civ. P. 56 does not allow for this form of relief and the Rohrbachs have not referred me to legal authority by which I may do so.

ACCORDINGLY, I ORDER as follows: 1) I GRANT Defendant's Motion for Summary Judgment on Claims of Kenneth G. Rohrbach, Karen L. Rohrbach, Paul K. Rohrbach, and Compost Express, Inc.[**Doc # 81**], and I DISMISS their individual claims pursuant to Fed. R. Civ. P. 56, with COSTS AWARDED to Defendant the Board of County Commissioners of Elbert County; and 2) I DENY Defendant's Motion for Summary Judgment on Claims of Onyx Properties LLC, Emerald Properties LLC, Valley Bank and Trust, Paul & Shauna Naftel, and the Estate of Local Service Corporation [**Doc # 80**].

Dated: December __12__, 2012 in Denver, Colorado.

                                                    BY THE COURT:


                                                    ___s/Lewis T. Babcock_____
                                                    LEWIS T. BABCOCK, JUDGE