IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-01482-LTB-KLM  (Consolidated w/11-cv-02321-RPM-MJW)

ONYX PROPERTIES LLC, a Colorado Limited Liability Company;
EMERALD PROPERTIES, LLC, a Colorado Limited Liability Company;
VALLEY BANK AND TRUST, a Colorado State Bank;
PAUL NAFTEL, an individual;
SHAUNA NAFTEL, an individual; and
The Estate of LOCAL SERVICE CORPORATION by and through its
    Chapter 11 Bankruptcy Trustee, SIMON E. RODRIGUEZ,

    Plaintiffs,
vs.

BOARD OF COUNTY COMMISSIONERS OF ELBERT COUNTY,

    Defendant
_____

KENNETH G. ROHRBACH,
KAREN L. ROHRBACH,
PAUL K. ROHRBACH, and
COMPOST EXPRESS, INC., a Colorado corporation,

    Plaintiffs,
vs.

BOARD OF COUNTY COMMISSIONERS OF ELBERT COUNTY, in its official capacity,

    Defendant
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

    This matter is before me on Plaintiffs' Motion for Class Certification Pursuant to Rule

23, Fed. R. Civ. P., in which Plaintiffs Onyx Properties, Emerald Properties, Valley Bank &

Trust, Paul & Shauna Naftel, and the Estate of Local Service Corporation seek to have this case

certified as a class action. [**Doc # 42**] Defendant Board of County Commissioners of Elbert County (the "BOCC") opposes this request. Oral argument would not materially assist me in the determination of this motion. For the following reasons, I DENY the motion seeking class certification.

## I. BACKGROUND

Plaintiffs in this case owned large tracts of property in Elbert County, Colorado, that they sought to divide into 35-acre parcels for development and sale in 2004-2006. The property known as Kiowa Creek Estates was owned by Plaintiffs Onyx Properties, Emerald Properties, and Paul & Shauna Naftel. The property know as Wolf Creek Ranches & Wolf Creek Estates was owned by Plaintiff Local Service Corporation and, later, by Plaintiff Valley Bank and Trust. The BOCC, via the Elbert County Planning Department, required both developments proceed through a re-zoning process in order to be subdivided. Ultimately, in two separate applications, Wolf Creek Ranches & Wolf Creek Estates was re-zoned from "A-Agriculture" to an "A-1" designation on October 27, 2004 and November 17, 2004. Kiowa Creek Estates was subsequently re-zoned from "A-Agriculture" to an "A-1" designation on September 20, 2006.

Thereafter, in 2006/2007, the BOCC brought and prevailed on a zoning enforcement action in Elbert County District Court enjoining property owners Kenneth, Karen and Paul Rohrbach from operating a commercial composting business on their property located in Elbert County. The Rohrbachs appealed and, in September 2009, a panel of the Colorado Court of Appeals reversed by overturning the trial court's ruling that the BOCC had proved that the Rohrbachs' property was zoned "A-Agriculture." *Board of County Commissioners of Elbert County v. Rohrbach*, 226 P.3d 1184 (Colo. App. Sept. 3, 2009). The Court of Appeals

determined that the applicable zoning regulation, which purported to establish zoning areas in Elbert County, could not be used to ascertain the zoning of the Rohrbachs' property because it:

> established zoning areas by showing them on the map 'dated July 5, 1983.' The [BOCC] was not able to find and did not introduce that map into evidence. Because the text of the regulation relied on the map to establish the zoning and the map was not produced, the [trial] court could not ascertain the zoning adopted by the [BOCC] . . .

*Id.* at 1188. As such, the Court concluded that "because the [BOCC] did not introduce a copy of the July 5, 1983 map in this case, it failed to prove that the Rohrbachs' property was zoned agricultural [and t]hus, the trial court erred in granting the injunction." *Id.* at 1189. A Petition for Writ of Certiorari was subsequently denied by the Colorado Supreme Court on March 15, 2010. *See* 2010 WL 893813 (Colo. 2010).

Following the Colorado Court of Appeals ruling, Plaintiffs filed this lawsuit against the BOCC in June 2010. They assert that the BOCC violated their constitutional rights to due process by improperly enacting and subsequently enforcing illegal or non-existent zoning regulations, and the related zoning map, against them and other property owners in Elbert County. Plaintiffs raise individual claims under 42 U.S.C. §1983 for the loss of their individual property rights without due process of law.

They also assert class claims under §1983 against the BOCC seeking damages and injunctive relief. With respect to the damages relief, Plaintiffs seek certification of a "Damages Class" consisting of:

> all persons who have on or after August 28, 1997: (1) submitted one o[r] more land use applications pursuant to the Zoning Regulations; and (2) all persons who have had the Zoning Regulations as amended by Wolf (inclusive of the Wolf Maps) and the BOCC enforced against them.

With respect to the injunctive relief, Plaintiffs seek an injunction against the BOCC enjoining it from "any further uses of these invalid Zoning Regulations" against the proposed class, "inclusive of any resolutions passed in accordance or furtherance of the Zoning Regulations." As a result, Plaintiffs request that I certify an "Injunction Class" consisting of:

> the plaintiffs, all other members of the class, the citizens of Elbert County as well as other members of the public. [Doc # 58]

In this motion, Plaintiffs seek an order certifying this case as a class action pursuant to Fed. R. Civ. P. 23. The BOCC opposes this request on the basis that Plaintiffs are unable to demonstrate the requirements of class certification.

## II. LEGAL STANDARDS – CLASS CERTIFICATION

As the parties seeking class certification, Plaintiffs must first demonstrate that all four prerequisites of Fed. R. Civ. P. 23(a) are clearly met. *Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir. 2004); *see also Tabor v. Hilti, Inc.*, __ F.3d ___, 2013 WL 150225 (10th Cir., Jan. 15, 2013). These threshold elements are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

If Plaintiffs prove they have met these threshold requirements, they must then demonstrate that the action falls within one of the three categories set forth in Fed. R. Civ. P. 23(b). *Shook v. El Paso County, supra,* 386 F.3d at 971. Here, Plaintiffs seek certification as to the proposed Damages Class pursuant to Rule 23(b)(3), which requires that "questions of law or

4

fact common to the members of the class predominate over any questions affecting individual members" and that the class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs also seek certification as to the Injunctive Class pursuant to Rule 23(b)(2), and must therefore show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole."

The party seeking to certify a class bears the strict burden of proving the requirements of Rule 23. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982)(quotation omitted). When deciding whether the proposed class meets the requirements of Rule 23, the trial court accepts the plaintiffs' substantive allegations as true, though it need not blindly rely on conclusory allegations and may consider the legal and factual issues which the complaint presents. *Shook v. El Paso County*, *supra*, 386 F.3d at 968 (*quoting J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n. 7 (10th Cir. 1999)); *see also Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009). The Court should not pass judgment on the merits of the case, but must conduct a "rigorous analysis" to ensure that the requirements of Rule 23 are met. *DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1194 (10th Cir. 2010)(*quoting General Telephone Co. Of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

The decision whether to grant or deny class certification "involves intensely practical

5

considerations and therefore belongs within the discretion of the trial court." *Tabor v. Hilti, supra*, __ F.3d. at ___ (*quoting Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988); *Monreal v. Potter*, 367 F.3d 1224, 1235 (10th Cir. 2004)).

### III.  THE DAMAGES CLASS

Plaintiffs' definition of the Damages Class consists of two subclasses. The first subclass is all persons who, on or after August 28, 1997, "submitted one o[r] more land use applications pursuant to the Zoning Regulations." The second subclass is all persons who, on or after August 28, 1997, "have had the Zoning Regulations as amended by Wolf (inclusive of the Wolf Maps) and the BOCC enforced against them."

**A.   Threshold Element – Numerosity**

To establish the numerosity requirement of Fed. R. Civ. P. 23(a)(1), Plaintiffs must demonstrate that the class is so numerous as to render joinder of all members impracticable. To satisfy this requirement, Plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. *See Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).

Plaintiffs argue that the BOCC concedes that there were at least 100-200 "A-1" applications seeking to re-zone property located in Elbert County during the relevant time period, pursuant to the Elbert County Planning Department files. Plaintiffs further assert that "hundreds" of other re-zoning applications were filed during that time period. Additionally, the Planning Department files document, on average, 70 enforcement actions per year during the relevant time period. Thus, Plaintiffs argue that the class size makes it impractical to join the

class members and, as such, the numerosity element is meet.

The BOCC responds that Plaintiffs have not proven that it is truly impracticable to join the remaining potential members – or that they could not file individual claims against the BOCC – because the zoning applications and enforcement records identify each potential class member. Moreover, some individuals may not be interested in joining the action because they do not wish to unravel prior zoning approvals. Therefore, it argues that Plaintiffs have not carried their burden of proving numerosity under Rule 23(a)(1). *See Trevizo v. Adams*, *supra*, 455 F.3d at 1162 (because numerosity cannot be presumed and potential class members were readily identifiable, "we cannot conclude the district court abused its discretion in finding that joinder was practical and that the potential class members could have filed individual claims").

I agree with Plaintiffs, however, that the question is not whether the class members could be joined as parties, but rather only whether joinder would be impractical. Plaintiffs have sufficiently proved a substantial number of potential class members – both for those who have submitted land use applications and those subjected to zoning enforcement actions during the relevant time period – and I find that joining this number of potential plaintiffs would be impractical. As such, they have met the burden of Rule 23(a) to prove numerosity for both proposed subclasses of the Damages Class.

**B.   Threshold Element – Commonality**

The commonality element of Fed. R. Civ. P. 23(a)(2) requires that there be questions of law or fact common to the class. The United States Supreme Court recently held that in order to satisfy this requirement, the claims of the members of the proposed class must depend on a

common contention which is "of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). Thus, "what matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (internal quotation and citation omitted).

Plaintiffs contend that commonality is satisfied because the BOCC engaged in a "common course of conduct" – in the enactment and subsequent enforcement of illegal zoning regulations and related maps – that served to violate the substantive due process rights of those who either were required to re-zone their property or who were subjected to zoning enforcement actions. They argue that this determination – whether the BOCC so acted – results in a common answer to the due process claims of all the class members. In response, the BOCC argues that Plaintiffs have only alleged illegal acts that may (or may not) have impacted the individual class members. It asserts that whether each class member's substantive due process rights have been violated requires case-specific analysis in that different property interests would be at issue, including whether such interest is protected, and thus the class members would not have suffered the same injury. *See In re Motor Fuel Temperature Sales Practices Litigation,* 279 F.R.D. 598, 612 (D. Kan. 2012)(finding commonality, pursuant to *Wal–Mart Stores v. Dukes*, *supra*, when the plaintiffs alleged a common practice "that applied to the entire class uniformly" it therefore alleged the "same injury"). As a result, the BOCC argues that the determination of whether the

8

zoning regulations/map at issue were invalid and illegally enforced would not "resolve an issue that is central to the validity of each one of the claims in one stroke," namely, whether the individual's substantive due process rights were violated.

First, to the extent that Plaintiffs argue that the BOCC has "conceded" that their proposed class mets the commonality requirement in a response to an interrogatory request, I disagree. While the response, which has apparently not been amended, indicates that it "does not dispute that Plaintiffs' complaint alleges common questions of law or fact," the response was qualified by the fact that the question was premature and, more importantly, it was answered prior to the time that the Damages Class was expanded in the Second Amended Complaint. [Doc #42 - Ex. 29, Doc # 57] In addition, common questions of law or fact, standing alone, do not meet the standard of commonality set forth in *Wal–Mart Stores v. Dukes*, *supra*. *See id.* 131 S.Ct. at 2551 ("what matters . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation"). Rather, at issue is Plaintiffs' contention that the commonality among the class is the underlying invalidity of the zoning regulations/map, and that the differences in application to the individual class members does not defeat commonality because their claim is not that due process was violated by the procedure used to enforce them, but instead was substantively violated when the regulations and/or map were adopted and then subsequently enforced.

Whether the zoning regulations/map at issue were illegally adopted is a common question applicable to both proposed subclasses of the Damages Class. However, I conclude that the vast dissimilarities in the enforcement against the individual punitive class members – including those that submitted re-zoning applications and those that had the zoning regulations/map

9

enforced against them – precludes a determination of commonality. First, the property rights at issue differ appreciably between the proposed class members and, as such, the analysis as to whether the alleged illegal activities of the BOCC violated the property owners' substantive due process rights requires individualized inquiry. Therefore, Plaintiffs cannot demonstrate the that class members possessed "the same interest and suffer[ed] the same injury as the class members." *Wal-Mart v. Dukes*, *supra*, 131 S.Ct. at 2550 (*quoting East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). In addition, the factual determination of damages incurred is highly individualized and, more significantly, the difficult question of the applicability of the commencement of the statute of limitations as to each class member in this case is significant. *See Tabor v. Hilti, supra*, __ F.3d. at ___ ("we cannot say that the proposed class presents common issues that could be resolved efficiently in a single proceeding")(*quoting McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 488 (7th Cir. 2012)). As such, I find that both subclasses identified in the Damages Class lack commonality. *See Tabor v. Hilti, supra*, __ F.3d. at ___ (noting that *Wal–Mart Stores v. Dukes, supra,* "substantially clarified the Rule 23(a)(2) commonality requirement"); *In re Motor Fuel Temperature Sales, supra,* 279 F.R.D. at 607 (indicating that the ruling in *Wal-Mart v. Dukes*, *supra* "arguably heightened the commonality requirement under Rule 23(a) and narrowed the permissible scope of a Rule 23(b)(2) class").

### C. Threshold Element – Typicality

In addition, Fed. R. Civ. P. 23(a)(3) requires that the claims or defenses of the class representatives be typical of those of the class which they seek to represent. The positions of the class representatives need not be identical to those of the other class members, so long as there is

a sufficient nexus between the claims of the class representatives and the common questions of law or fact which unite the class. *Clark v. State Farm Mut. Auto. Ins. Co.,* 245 F.R.D. 478, 484 (D. Colo. 2007). "The commonality and typicality requirements tend to merge," and both "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are [sufficiently] interrelated." *Young v. Dollar Tree Stores, Inc.*, 2012 WL 3704997 (D. Colo. 2012)(unpublished)(*citing General Telephone v. Falcon*, *supra*, 457 U.S. at 157 n. 13).

      Plaintiffs argue that because the BOCC sought enforcement of the invalid regulations/map at issue against them by requiring them to re-zone their property, and their claims are based on the same remedial theory as the class – specifically, that they, like the other class members, are entitled to damages under §1983 because the BOCC violated their substantive due process rights when creating and then enforcing illegal zoning laws against them – that their claims are typical of the proposed class members. I agree with the BOCC, however, that Plaintiffs' claims are not typical of the claims of the class members because they represent only property owners who claim to have a protected property interest in the right to subdivide their property into 35-acre parcels, while the proposed class, on the other hand, consists of all property owners who were either required to re-zone their property or were subjected to any zoning enforcement actions, regardless of the property right affected, the type of re-zoning at issue, or the nature of the zoning enforcement. The proposed Damages Class – including both those that submitted any type of re-zoning application and those that had the zoning regulations/map enforced against them – goes significantly beyond the individual claims raised by the named Plaintiffs. *See Zapata v. IBP, Inc.,* 167 F.R.D. 147, 156 (D. Kan. 1996)("Greater

precision is required in defining a class when compensatory relief is sought, rather than injunctive or declaratory relief"). As a result, I find that the relationship of the named Plaintiffs and the proposed class of citizens entitled to damages based on the BOCC's alleged enforcement of the zoning regulations/map at issue, is insufficient to establish typicality.

### D. Threshold Element – Adequacy of Representation

Finally, Fed. R. Civ. P. 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class. This requirement entails the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Willbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir. 2002)(*quoting Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs bear the initial burden of demonstrating facts to support a finding that they will adequately protect the interests of the class. *Schwartz v. Celestial Seasonings, Inc.,* 178 F.R.D. 545, 552 (D. Colo. 1998). Once the plaintiffs have made a *prima facie* showing of adequate representation, the burden shifts to the defendant. *Id.* Absent evidence to the contrary, a presumption of adequate representation is invoked. *Id.* I am satisfied that Plaintiffs' counsel is capable of prosecuting this class action and to the extent that they seek damages for enforcement of the alleged illegal zoning regulations/map, that Plaintiffs can adequately represent the interests of the proposed class.

### E. Rule 23(b)(3) Requirements

Although I have determined that Plaintiffs have failed to met the threshold requirements for class certification of the Damages Class under Fed. R. Civ. P. 23(a) – specifically, the

element of commonality under Rule 23(a)(2) and typicality under Rule 23(a)(2) – I further find that Plaintiffs have likewise failed to demonstrate that their proposed Damages Class, including the subclasses, falls within the Fed. R. Civ. P. 23(b)(3) requirements.

As to the proposed Damages Class, Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) first requires that I find that the questions of law or fact common to the class predominate over any questions affecting individual members. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters have to be tried separately." *Cook v. Rockwell Intern. Corp.,* 151 F.R.D. 378, 388 (D. Colo. 1993). The second requirement for class certification under Rule 23(b)(3) is that the class action be "superior to other available methods fairly and efficiently adjudicating the controversy."

In determining whether to certify a class under Rule 23(b)(3), the Court considers:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

I find that questions of law or fact common to the class – namely whether the BOCC enacted and then subsequently enforced illegal zoning regulations/map against property owners – do not predominate over questions affecting individual members.  Nor do I conclude that the class action for damages would be superior to individual actions which are available, and would fairly and efficiently adjudicate the individual claims.  In so doing, I find that it is likely that each class member has an interest in controlling his or her claim given the individualized nature of that claim and in defending against the running of the statute of limitations against them.  I am not aware of other pending landowner claims except, of course, the counterclaims that remain pending in *BOCC of Elbert County v. Rohrbach, supra,* in Elbert County District Court.  Finally, as discussed above, the individual issues include:  potential BOCC liability as to each property owner related to the enforcement of the zoning regulations/map against each individual property interest affected; the applicability of a possibly complex statute of limitations analysis relevant to each separate situation; and the differing damages related to each property owner which would result in significant difficulties in managing a class action for damages.  As such, the proposed class is not sufficiently cohesive to warrant adjudication by representation.

Therefore, such individualized assessments, in my view, predominate over the issue of the legality of the BOCC's actions in the adoption and enforcement of the zoning regulations/maps at issue here and, although their ultimate legality may certainly effect the interests of the proposed class members, I find that a class certification of the Damages Class – including both subclasses – is not superior to individualized adjudication of its potential substantive due process claims under Rule 23(b)(3).  *See Tabor v. Hilti, supra*, __ F.3d. at __

(upholding the trial court analysis that "highly individualized" facts and defenses cannot be effectively resolved in a class suit brought pursuant to Rule 23(b)(3)).

## IV. THE INJUNCTION CLASS

Although Plaintiffs' definition of the proposed Injunction Class specifically includes "the plaintiffs" and "all other members of the class," in actuality it seeks certification of a class of "the citizens of Elbert County as well as other members of the public" as this broad definition is obviously inclusive of all the specified proposed class members. In their motion, Plaintiffs indicate that they seek an injunction enjoining the BOCC from "enforcing the [allegedly illegal zoning regulations/map] against all members of the public" and that such relief "would include any action that the BOCC took in furtherance of the [illegal zoning regulations/ map] such as the resolutions issued against the properties of the Plaintiffs." [Doc #42]

To the extent that the injunctive relief sought by Plaintiffs prohibits *future* use by the BOCC of the allegedly illegal regulations/map, the BOCC asserts that such relief is now moot in that it has subsequently enacted new zoning regulations and maps in May of 2010 (following the filing of this lawsuit) that repeal the prior zoning regulations/map that are at issue here. Thus, it argues an order enjoining the enforcement of the previous zoning regulations/map at issue in this case "would have no force or effect because the BOCC is no longer enforcing that version of its zoning regulations."

As an initial matter, I note that to the extent Plaintiffs attempt to challenge the validity and/or future enforcement of the new May 2010 zoning regulations, such claims are not within

of the scope of their claims or of this lawsuit. Rather, any prospective injunctive relief sought by Plaintiffs is limited to the BOCC's possible enforcement of the alleged illegal regulations/map at issue in this case. Because future use of the regulations/map challenged by this lawsuit seems unlikely, and the utility of such an injunction would be limited, the future injunctive relief sought is virtually moot. However, I address the question because Plaintiffs seek injunctive relief prohibiting the *future* enforcement by the BOCC of *past* determinations made pursuant to the illegal regulations/map. This includes "any action that the BOCC took in furtherance of the [allegedly illegal zoning regulations/map] such as the resolutions issued against the properties of the Plaintiffs" and, presumably, any other past or historical zoning determinations made pursuant to the regulations/map at issue related to Elbert County property. This relief – as applied to the proposed class of the citizens of Elbert County and other members of the public – is the primary relief sought by Plaintiffs' class action injunctive claim.

### A.  Threshold Element – Numerosity

The BOCC does not challenge that Plaintiffs are able to demonstrate that the proposed Injunctive Class is so numerous as to render joinder of all members impracticable in order to establish the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

### B.  Threshold Element – Commonality

With regard to the commonality prerequisite in Fed. R. Civ. P. 23(a)(2), the BOCC maintains that there is no commonality between the broadly-defined proposed class (all citizens of Elbert County and members of the public) and the requested injunctive relief (enjoining any potential future enforcement of the illegal zoning regulations/map and any future enforcement of

past zoning determinations made thereunder). I agree.

As discussed above, while Rule 23(a)(2) requires only that there be questions of law or fact common to the class, the standard set forth in *Wal–Mart v. Dukes*, *supra*, mandates that the common contention to be decided is "of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* 131 S.Ct. at 2551. I agree with the BOCC that the disconnect between the proposed class members (all the citizens of Elbert County and members of the public) and the requested relief (an injunction of enforcing the illegal regulations/map and in enforcing past zoning determination) precludes a finding of commonality in that the definition of the class is too broad. I conclude that the "citizens of Elbert County" and "other members of the public" is not sufficiently precise to find commonality under Rule 23(a)(2) capable of class-wide resolution, based on the circumstances and the injunctive relief sought in this case.

## C. Threshold Element – Typicality

Likewise, I find that Plaintiffs have failed to establish the Fed. R. Civ. P. 23(a)(3) typicality prerequisite, which requires that Plaintiffs' claims – as the class representatives – are typical of the claims of the Injunction Class which they seek to represent, in that there is not a sufficient nexus between their claims and the common questions of law or fact which unite the class.

Plaintiffs argue that they are typical of the proposed injunctive class because the BOCC used the allegedly invalid regulations/map against them by requiring them to re-zone their

property, and that the BOCC continues to do so by presently enforcing the imposed zoning (and its requirements). Thus, Plaintiffs assert that their claims are typical of the claim of the Injunctive Class members. However, I find that the relationship of the named Plaintiffs and the proposed class of all Elbert County citizens and the public, is insufficient to establish typicality based on the broad definition of the class and the comprehensive potential applicability of the injunctive relief requested.

**D. Threshold Element – Adequacy of Representation**

Finally, Fed. R. Civ. P. 23(a)(4) requires that the named Plaintiffs fairly and adequately protect the interests of the Injunctive Class in that they, and their counsel, do not have any conflicts of interest with other class members. The BOCC contends that, with regard to the injunctive relief enjoining the enforcement of prior zoning determinations, the interests of the named Plaintiffs are in conflict with members of the class that do not want their zoning determinations – made pursuant to the allegedly illegal regulations/map at issue – to be voided or not enforced. The BOCC provides me with evidence – in the form of an affidavit provided by James Marshall, a Developer in Elbert County – indicating opposition to "any class action decision that would have any adverse effect on the validity of" land use approvals previously made by the BOCC pursuant, at least in part, the regulations/map being challenged by this case. [Doc # 58, Ex. D] *See Amchem Products v. Windsor, supra*, 521 U.S. at 626; *In re Motor Fuel Temperature Sales Practices Litigation,* 271 F.R.D. 221, 231 (D.Kan. 2010)("[a] fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in benefit to other class members"). As a result, I find that Plaintiffs have not shown that they can fairly and adequately protect the interests of the Injunctive Class, as required by Rule

23(a)(4), due to the existence of fundamental conflicts with other class members.

**E. Rule 23(b) Requirements**

Finally, although I have again determined that Plaintiffs have failed to met the threshold requirements for class certification of the Injunctive Class under Fed. R. Civ. P. 23(a), I further conclude that their request for certification of the Injunctive Class fails to meet the standard of Fed. R. Civ. P. 23(b)(2), which permits the certification of a class action when the BOCC "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The key to determining a class under Rule 23(b)(2) is "the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores v. Dukes*, *supra*, 131 S.Ct. at 2557 (quotation omitted).

> In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Id.*

As a result, to the extent that Plaintiffs seek relief in the form of enjoining the BOCC from continued enforcement of prior determinations previously made under the allegedly illegal zoning regulations/map, I find that such an action is not certifiable under Rule 23(b)(2) in that the relief is not appropriate respecting the class – as the citizens of Elbert County and other members of the public – as a whole. Rather, I agree that the BOCC's reliance on the

regulations/map at issue to consider past determinations would require an individualized assessment of the applicability and the appropriate relief, as opposed to future injunctive relief to Elbert County citizens and members of the public.   To the extent that Plaintiffs seek to enjoin the BOCC from applying the illegal zoning regulations/map at issue to future determinations, as discussed above, I find that the limited and speculative nature of such potential future acts does not warrant the application of a injunctive class action.   Therefore, I conclude Plaintiffs have not established that final injunctive relief is appropriate as respecting the Injunctive Class as a whole, as defined, pursuant to Rule 23(b)(2).

## V. CONCLUSION

ACCORDINGLY, I DENY Plaintiffs' Motion for Class Certification Pursuant to Rule 23, Fed. R. Civ. P. [**Doc # 42**]


Dated: January 17, 2013 in Denver, Colorado.

BY THE COURT:


s/ Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE