IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-01482-LTB-KLM (Consolidated w/11-cv-02321-RPM-MJW)

ONYX PROPERTIES LLC, a Colorado Limited Liability Company;
EMERALD PROPERTIES, LLC, a Colorado Limited Liability Company;
PAUL NAFTEL, an individual;
SHAUNA NAFTEL, an individual;
LOCAL SERVICE CORPORATION, by and through its Chapter 11 bankruptcy trustee,
    Simon E. Rodriguez,

                              Plaintiffs,
v.

BOARD OF COUNTY COMMISSIONERS OF ELBERT COUNTY,

                              Defendant.
_____

ORDER
_____

This matter is before me on a Motion for Summary Judgment filed by Defendant, Board of County Commissioners of Elbert County (the "BOCC"), seeking judgment in its favor on the 42 U.S.C. §1983 claim raised against it by Plaintiffs Onyx Properties LLC, Emerald Properties, LLC, Paul & Shauna Naftel, and Local Service Corporation, by and through its Chapter 11 bankruptcy trustee Simon E. Rodriguez. [**Doc #141**] After consideration of the parties' briefs and attachments, as well as oral arguments by counsel in open court on March 16, 2015, I GRANT the motion.

**I. BACKGROUND**

Plaintiffs owned large parcels of property in Elbert County, Colorado. During the 2004-2006 time period, Plaintiffs sought to divide their respective properties into smaller 35-acre

parcels for development and sale. It is Elbert County's position that the properties were zoned "A-Agricultural" at the time of purchase and, in order to subdivide the properties, it required both developments to proceed through a re-zoning process to an "A-1" zoning designation. The property known as Wolf Creek Ranch & Wolf Creek Estates was subsequently re-zoned from "A-Agriculture" to an "A-1" designation in October of 2004, and property known as Kiowa Creek Estates was re-zoned from "A-Agriculture" to an "A-1" designation in September of 2006.

In this lawsuit, Plaintiffs assert that Elbert County illegally enforced invalid zoning regulations and maps when requiring them to re-zone their property. As such, Plaintiffs assert claims under 42 U.S.C. §1983, for the loss of their individual property rights without due process of law.

## II. FACTS

The facts, unless otherwise noted, are undisputed. In 1983, the BOCC enacted zoning regulations and identified zone districts on a map of Elbert County, known as the "1983 map." Two of the zoning districts used to designate property at that time were "A-Agricultural" and "A-1." In January of 1986, the BOCC amended the zoning regulations to delete the A-1 zoning designation.

Then, in September of 1993, the BOCC voted in favor of re-establishing the A-1 designation, after a public hearing. Plaintiffs assert, however, that the BOCC did not hold a public hearing and, so, the A-1 designation was not properly reinstated. A few months later – in November of 1993 – the BOCC adopted Resolution 93-125 that amended the zoning regulations (as discussed in September of 1993) to effectuate the re-adoption of the A-1 designation. Then,

at a public meeting in January of 1994, the BOCC adopted a Resolution 94-04, which set forth the procedure to be used to re-zone property from an A-Agricultural designation to an A-1 designation.  Resolution 94-04 provides, in relevant part, that:

> The location of the zoning areas hereby established is shown on the map entitled "Official Zoning map of Elbert County", dated July 5, 1983, (the "1983 map") which is hereby made, along with explanatory matter thereon, a part of this Regulation.

The 1983 map was, at some point thereafter, lost.  The BOCC was aware of the missing map by, at the latest, August of 1997.  As such, the Elbert County Planning Department, working under Planning Director Ken Wolf, recreated the zoning map based on historical information. After a new map was created for each township located in Elbert County, Mr. Wolf would approve the newly-created map(s) without conducting a public hearing or other process.

Plaintiffs contend that these 1997 maps – which it asserts were illegally implemented without due process – were thereafter improperly enforced against Elbert County property owners, including themselves.  They argue that the BOCC knowingly misrepresented to the public that the re-created 1997 maps were the official zoning maps of Elbert County when, in fact, the "official" 1983 map was missing.  Plaintiffs argue that the BOCC misrepresented the maps in order to avoid a public hearing and avoid the issue of grand-fathering in preexisting uses. As such, Plaintiffs contend that the BOCC enforcement of the zoning designations contained on the 1997 maps was illegal.   The BOCC asserts, in response, that the updated 1997 maps did not change the pre-existing zoning of any property in Elbert County including that the properties subsequently purchased by Plaintiffs.  The BOCC further contends that it is undisputed that the Plaintiffs' properties were zoned "A-Agriculture" on the 1983 map, and continued to be zoned

"A-Agriculture" until they were re-zoned, at Plaintiffs' request, in 2004 and 2006.

Plaintiffs also assert that only the first six pages of the 1983 zoning regulations were contained in the official record, and that the remainder of the original document "was nowhere to be found." Thus, Plaintiffs claim that in 1997 Mr. Wolf drafted (and recorded) a new document, entitled "Elbert County Zoning Regulations," that was likewise not subjected to a public hearing and was not officially approved by the BOCC in their entirety. Plaintiffs contend that the BOCC's subsequent enforcement of the 1997 zoning regulations – as well as the zoning designations on the 1997 maps – was also illegal.

In May of 2004, Plaintiff Local Service Corporation ("LSC") purchased a 1600-acre parcel of property – now known as Wolf Creek Ranches and Wolf Creek Estates (collectively, the "Wolf Creek Properties") – with the intention of subdividing the property into 35-acre parcels. The Elbert County Planning Director informed the owner of LSC that the property was zoned "A" and that it would have to be re-zoned "A-1" in order to be subdivided. As a result, LSC submitted two applications to re-zone the property. The Elbert County Planning Commission considered and voted to approve the application for Wolf Creek Ranches on September 23, 2004, and the BOCC approved the application on October 27, 2004. The Elbert County Planning Commission considered and voted to approve the application for Wolf Creek Estates on October 28, 2004, and the BOCC approved the application on November 17, 2004.

Plaintiff Emerald Properties LLC purchased a 320-acre parcel of property – now known as Kiowa Creek Estates – in October of 2005. Plaintiffs Paul and Shauna Naftel (collectively, the "Naftels") personally guaranteed the purchase loan. Shortly thereafter, the property was deeded to Plaintiff Onyx Properties LLC. Paul Naftel –  the manager and majority shareholder of

Onyx Properties – was told by the Elbert County Planning Department that in order to subdivide the property into eight parcels (at least 35-acres in size) he would need to file an application to re-zone it from "A" to "A-1." Plaintiff Onyx Properties submitted an application to re-zone the property. The Elbert County Planning Commission recommended approval of the application to rezone Kiowa Creek Estates on August 24, 2006. After a hearing on September 20, 2006, the BOCC approved the application.

Then, in 2007, the BOCC prevailed in a zoning enforcement action in Elbert County District Court enjoining Kenneth, Karen and Paul Rohrbach (the "Rohrbachs") from operating a commercial composting business on their real property located in Elbert County because its "A-Agriculture" zoning designation did not allow such use. The Rohrbachs appealed and, in September 2009, a panel of the Colorado Court of Appeals overturned the trial court's ruling that the BOCC had proved the zoning designation of the Rohrbachs' property in *Board of County Commissioners of Elbert County v. Rohrbach*, 226 P.3d 1184 (Colo. App. Sept. 3, 2009). The Court of Appeals determined that the applicable zoning regulation (Resolution 94-04) could not be used to ascertain the zoning of the Rohrbachs' property because it:

> established zoning areas by showing them on the map 'dated July 5, 1983.' The [BOCC] was not able to find and did not introduce that map into evidence. [Thus, b]ecause the text of the regulation relied on the map to establish the zoning and the map was not produced, the [trial] court could not ascertain the zoning adopted by the [BOCC] . . .

*Id.* at 1188. Consequently, the Court concluded that "because the [BOCC] did not introduce a copy of the July 5, 1983 map in this case, it failed to prove that the Rohrbachs' property was zoned agricultural [and t]hus, the trial court erred in granting the injunction." *Id.* at 1189.

The case was remanded for a determination of the Rohrbach's counterclaims against the BOCC, including its procedural due process claim pursuant to 42 U.S.C. §1983. On February 17, 2015, the trial court ruled, following a bench trial, that the Rohrbachs had not established a §1983 violation of procedural due process. In so doing, the trial court ruled that the "appellate court did not rule as a matter of law that the zoning of the[ir p]roperty could not be established without the 1983 map." Rather, it found that the evidence revealed that the Rohrbachs' property had always been zoned "Agriculture," and there was also no evidence presented demonstrating that commercial composting was a use of right. Hence, the trial court ruled that the Rohrbachs had no constitutionally protected property interest. And, even if there was, the court further ruled the Rohrbachs "failed to establish that they suffered any procedural due process violation related to the creation of zoning regulations affecting the[ir p]roperty" as it "was zoned 'A' or agricultural before the [Rohrbachs] purchased the property." [Doc #181-1]

In the meantime, Plaintiffs filed this lawsuit in June of 2010, following the Colorado Court of Appeals ruling, in which they allege that they were improperly forced to re-zone their real property – from "A-Agriculture" to an "A-1" designation – by Elbert County when they sought to divide the properties into 35-acre parcels for development in 2004 and in 2006. Specifically, Plaintiffs assert a §1983 claim for the loss of their property rights, without due process of law, by the alleged improper enactment and subsequent enforcement of the illegal zoning regulations and related zoning map(s) against them. The Rohrbachs also filed a federal lawsuit against the BOCC seeking damages under §1983 for enforcement of unconstitutional and non-existent zoning regulations against them, which was consolidated into this case and then dismissed as it was filed outside of the applicable statute of limitations time period. [Doc #95]

### III.  MOTION FOR SUMMARY JUDGMENT

The BOCC now seeks judgment in its favor on Plaintiffs' individual §1983 claims for violation of their right to due process.  Specifically, the BOCC argues that:  (1) each individual Plaintiff cannot establish that they have a property interest; (2) the right to "being able to subdivide the property into smaller parcels without going through the re-zoning process" is not a constitutionally protected property interest; (3) this Court has no jurisdiction to entertain state law attacks upon local legislation (such as zoning regulations) under the guise of a due process claim; (4) because Plaintiffs were allowed to re-zone, they were not deprived of being allowed to divide their property into smaller parcels (which is their claimed property interest); and (5) the BOCC's actions did not violate Plaintiffs' due process rights.  The BOCC also argues that Plaintiffs' claims are barred by the statute of limitations.

### IV. STANDARD OF REVIEW

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).  If there is no genuine issue of material fact in dispute, then a court must determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex v. Catrett, supra*, 477 U.S. at 322.

### V.  STANDING OF INDIVIDUAL PLAINTIFFS

As an initial matter, the BOCC argues several of the Plaintiffs are unable to allege a constitutionally protected property interest because they were not the owners of the properties at

the time they applied to be re-zoned from an "A" to and "A-1" designation. The BOCC concedes that Plaintiff LSC was the owner of the Wolf Creek Properties and was the applicant for the re-zoning of those properties in 2004. However, as to Kiowa Creek Estates, the BOCC argues that Onyx Properties was the sole owner of the property at the time of the re-zoning application in 2006. As such, it claims that neither Emerald Properties nor the Naftels had a protected property interest in Kiowa Creek Estates and, thus, they should be dismissed as Plaintiffs in this action. Plaintiffs, in response, do not dispute that Onyx Properties was the only owner in 2006, but they assert that the Naftels were the owners and controlling shareholders of Onyx Properties and that the owners/shareholders of a corporation may bring a constitutional claim of their entity in their own right because they have a "direct personal interest" in this cause of action.

Generally, any conduct harming a corporation confers standing on the corporation, not its shareholders. *Bartel v. Kemmerer City,* 482 Fed.Appx. 323, 326, 2012 WL 1925549, 2 (10th Cir. 2012)(not selected for publication)(*quoting Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) and *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005)(citing cases and holding standing requirement applies to actions brought to redress injuries to corporation under §1983)). "There is, however, an exception to this rule where the actions of the third party that injure the corporation also cause injury to the shareholder which is unique to himself . . . as a shareholder of the corporation and not suffered by the other shareholders." *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002). Thus, the rule "does not bar corporate owners from bringing suit if they have a direct, personal interest in a cause of action . . . even if the corporation's rights are also implicated." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1156 (C.A.10 (Okla.),2013), *affirmed by Burwell v. Hobby Lobby Stores, Inc*., ___ U.S.

Case 1:10-cv-01482-LTB-KLM   Document 183   Filed 03/24/15   USDC Colorado   Page 9 of 16

___, 134 S.Ct. 2751, 189 L.Ed.2d 675 (Jun 30, 2014)(*quoting Franchise Tax Bd. of California v. Alcan Aluminum Ltd.,* 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990)).

In determining the standing of Plaintiffs, I first note that they do not make an argument as to the standing of Emerald Properties – except that it had an interest in the property "at some point" – and, as such, I will dismiss Emerald Properties as a plaintiff in this case. As to Paul and Shauna Naftel, I disagree with Plaintiffs that the Naftels, as the controlling shareholders of Onyx Properties, have a direct personal interest in the cause of action sufficient to provide them separate standing in addition to the standing of Onyx Properties. The fact that the Naftels directed the "outlays" or payments made by Onyx Properties to pay for the costs associated with the application to re-zone Kiowa Creek Estates is not, as a matter of law, a direct personal interest in the redress of the alleged procedural due process violation here. *See Bartel v. Kemmerer City, supra,* 482 Fed.Appx. at 326 (ruling that officers of general contractor lacked standing to sue city on their individual behalf as the did not assert injury separate from the due process injury of the corporation).

Thus, I conclude that Plaintiffs Emerald Properties and Paul and Shauna Naftel do not have standing to pursue this lawsuit in their individual capacities and, hence, I dismiss their claims against the BOCC and dismiss them as parties to this lawsuit.

### VI.  PROPERTY INTEREST

As to the merits of Plaintiffs' §1983 claim, the BOCC first contends that the property interest at issue in this case is not cognizable as a constitutionally protected interest. The Fourteenth Amendment states that no state shall "deprive any person of . . . property[] without

9

due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

In evaluating a procedural due process claim, I first determine whether the defendant's actions deprived the plaintiff of a constitutionally protected property interest. *Id. (quoting Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). To establish such an interest, a state-law rule or understanding must give the recipient "a legitimate claim of entitlement to [the benefit]." *Bd. of Regents v. Roth, supra,* 408 U.S. at 577. Property rights recognized by the Fourteenth Amendment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Thus, "constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Nichols v. Bd. of Cnty. Comm'rs*, 506 F.3d 962, 970 (10th Cir. 2007); *see also Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1026 (10th Cir. 2011)(noting that the "identification of those benefits and the 'legitimate claim of entitlement' to them is determined not by the Constitution, but largely by state law")(*quoting Eason v. Bd. of Cnty. Comm'rs*, 70 P.3d 600, 604-5 (Colo. App. 2003)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth, supra,* 408 U.S. at 577.

At oral arguments, Plaintiffs asserted that the property interest they claim was deprived or

taken by Elbert County (via application of its illegal regulation and maps) was "their right to subdivide their property" as a "subset of their right of use." The BOCC argues Plaintiffs' claimed interest – the unencumbered right to divide their real property into 35-acres lots – is not a constitutionally protected property interest. I agree with the BOCC that, contrary to Plaintiffs' argument, ownership of real property does not, in and of itself, provide a constitutionally protected property interest as a landowner faces numerous restrictions on the full use and alienability of land.

While "the right to use property is fully protected by the Due Process Clauses of the federal and state constitutions, [it] is subject to a proper exercise of the police power." *Jordan-Arapahoe v. Bd. of Cnty. Comm'rs*, *supra*, 633 F.3d at 1026 (*quoting Eason v. Bd. of Cnty. Comm'rs*, *supra*, 70 P.3d at 605). Zoning is the most prominent police power restriction on land use, but a municipality's power to zone must be balanced against landowners' rights. *Id.* In the context of municipal land use, "the entitlement analysis presents a question of law." *Id.* (*quoting Nichols v. Bd. of Cnty. Comm'rs*, *supra*, 506 F.3d at 970).

Plaintiffs are, in essence, arguing that their right to use (in the form of the unencumbered ability to subdivide) their property is unlimited, in that the map and the zoning regulations regulating it are improper. However, the law in Colorado is clear that a constitutionally protected property interest in the context of land use must derive from and is defined by "statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Nichols v. Bd. of Cnty. Comm'rs*, *supra*, 506 F.3d at 970 (*quoting Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003)). Plaintiffs do not refer me to Colorado law providing them with the property right to subdivide their property. Plaintiffs instead argue that a protectable property

11

right extends to the full rights contained in the property "bundle of sticks" under *Bd. of Regents v. Roth, supra,* 408 U.S. at 572 (noting that property interests protected by procedural due process "extend well beyond actual ownership of real estate"); *see also Dickman v. Comm'r of Internal Revenue*, 465 U.S. 330, 336, 104 S.Ct. 1086, 79 L.Ed.2d 1086 (1984)(ruling that the use of money is itself a legally protectable property interest in a non-constitutional gift tax case). While ownership in property provides a basis for a property interest, it does not – in and of itself – create or define one for procedural due process purposes. Again, such interest is established, in Colorado, by state law. *Jordan-Arapahoe v. Bd. of Cnty. Comm'rs*, *supra,* 633 F.3d at 1026 (court "must turn to state law in understanding the scope of property rights in land ownership").

Furthermore, I agree with the BOCC that the evidence is undisputed that the properties were, at the time of purchase by Plaintiffs, zoned A-Agriculture.  While it is clear that the BOCC cannot produce the official 1983 map that would be definitive of that designation, it has provided other undisputed evidence that the base zoning applicable to parcels sized 60 acres or larger located in Elbert County (as the properties here) was "A-Agriculture" and, likewise, that the area located north of Kiowa (as the properties here) was zoned Agriculture.  Plaintiffs, in response, provide no evidence that any of the property at issue was designated differently or had been re-zoned prior to the applications at issue in 2004/2006.

Therefore, I conclude that Plaintff have not articulated a constitutionally protected property interest they were deprived of by the BOCC's action.  Therefore, they are unable to make a procedural due process claim under 42 U.S.C. §1983.  *Nichols v. Bd. of Cnty. Comm'rs*, *supra*, 506 F.3d at 969 (in order to prevail on a procedural due process claim under §1983, "a plaintiff must first establish that a defendant's actions deprived [the] plaintiff of a protectible

property interest")(*quoting Hyde Park v. Santa Fe City Council, supra,* 226 F.3d at 1210)).

## V.  DUE PROCESS

However, even if Plaintiffs have articulated a cognizable property interest, I agree with the BOCC that they have not shown that the BOCC's actions deprived them of that property interest, as a matter of law, by violating their rights to procedural due process.

If a plaintiff can show a constitutionally protected property interest, the Court must then consider whether the plaintiff was afforded the appropriate level of process in the depravation of that interest.  *See Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Stanko v. Maher*, 419 F.3d 1107, 1115 (10th Cir. 2005)(citation omitted).

The BOCC argues that Plaintiffs were provided due process in the consideration and ruling on their application to re-zone their property from an "A-Agricultural" to "A-1" classification.   Plaintiffs, in response, do not dispute that the hearing and notice given to them in the re-zoning application process was sufficient; rather, they argue that the BOCC violated their right to due process by requiring them to re-zone their property via enforcement of zoning regulations and maps that Elbert County knew were improper.

In this case, Plaintiffs take issue with the due process provided when the underlying regulations and maps were adopted by Elbert County; specifically, the re-adoption of the A-1 zoning designation in 1993, and the creation of the replacement zoning maps in 1997.  However, those actions are quasi-legislative in nature – in that those acts applied to all property within a

particular district – and, as such, procedural due process does not apply. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915). Furthermore, to the extent that Plaintiffs aver that those actions did not comply with Colorado state statutes (specifically, Colorado Revised Statutes §§30-28-111 though 116) such alleged violation is not actionable under §1983. Moreover, Plaintiffs cannot use a due process violation claim to challenge the validity of zoning legislation under state law. *See Norton v. Village of Corrales*, 103 F.3d 928, 933–34 (10th Cir. 1996)(affirming the district court's dismissal of the due process claims even assuming, *arguendo*, that the underlying ordinances were invalid for failure to comply with state law publication requirements).

In addition, Plaintiffs had available administrative and judicial remedies to challenge Elbert County which provided adequate due process. First, Plaintiffs do not contest that the re-zoning application process and hearing, which resulted in determinations in Plaintiffs' favor, provided sufficient due process. In addition, it is undisputed that Plaintiffs had judicial remedies, under Colorado law, to redress any violation of their rights caused by Elbert County's requirement that they re-zone their properties. Specifically, Plaintiffs had the available remedies of judicial review under Colo. R. Civ. P. 106(a)(4), as well as a declaratory judgment action under Colo. Rule Civ. P. 57. *See generally Native American Rights Fund, Inc. v. City of Boulder,* 97 P.3d 283, 287 (Colo. App. 2004).

Plaintiffs argue that existence of such remedies is irrelevant under *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which ruled that a plaintiff's state law remedies need not be exhausted before pursuing a §1983 claim for unconstitutional search and seizure. To the contrary, the existence of state remedies is, indeed, relevant to a §1983 procedural due

process claim because such constitutional violation is not complete "unless and until the State fails to provide due process," so then, "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate," including "any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).  Based on this authority, I reject Plaintiffs' unsupported argument that the remedies provided by state law are insufficient in this case because they do not provide for damages or monetary recovery.

Thus, I conclude that Plaintiffs have not articulated a cognizable property interest that was deprived by the BOCC's actions and, even if they had, those actions did not deprive them of that property interest via violation of procedural due process.  The BOCC is entitled to dismissal of Plaintiffs' procedural due process claim, under 42 U.S.C. §1983, as a matter of law.

## VI. VOID FOR VAGUENESS

I note that to the extent that Plaintiffs' complaint contains a constitutional void-for-vagueness challenge, the parties agreed at oral arguments that any such challenge does not constitute an independent legal claim or theory of recovery.  Rather, such challenge "lives or dies" on the procedural due process claim, which, I have concluded, is not legally cognizable under these circumstances and undisputed facts.

## VII.  STATUTE OF LIMITATIONS

Finally, I do not reach BOCC's final argument that it is entitled to summary judgment in its favor because Plaintiffs' §1983 claim for violation of procedural due process is time-barred

based on: 1) new deposition testimony that Plaintiff LCS knew or had reason to know of the injury claimed here in 2004; and 2) the lack of evidence that Plaintiff Onyx Properties made any attempt to investigate the zoning designation or the validity of the zoning regulations and maps in 2006.

ACCORDINGLY, for the foregoing reasons, I GRANT the Motion for Summary Judgment filed by Defendant, Board of County Commissioners of Elbert County (the "BOCC"). [**Doc #141**]  In so doing, I DISMISS Plaintiffs Emerald Properties LLC, and Paul and Shauna Naftel, as parties for lack of standing.  I ENTER JUDGMENT as a matter of law in favor of Defendant, and against Plaintiffs Onyx Properties LLC and Local Service Corporation, by and through its Chapter 11 bankruptcy trustee, Simon E. Rodriguez.  I AWARD COSTS to Defendant.

Dated: March   24  , 2015,  in Denver, Colorado.

                                      BY THE COURT:

                                          s/Lewis T. Babcock
                                      Lewis T. Babcock, Judge